IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–01354–EWN

GARY L. RICH,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner
of Social Security,

    Defendant.

_____

**ORDER AND MEMORANDUM OF DECISION**
_____

    This is a social security benefits appeal under 42 U.S.C. § 405(g) (2006). Plaintiff Gary L. Rich challenges the final decision of the Commissioner of Social Security (the "Commissioner"), denying his application for Disability Insurance Benefits and Supplemental Security Income Benefits. Jurisdiction is based on 42 U.S.C. § 405(g) (2006).

**FACTS**

*1.    Medical Evidence*

    Plaintiff was born on September 17, 1957, and was forty-three years old at the onset of his alleged disability. (Admin. R. at 49–50 [filed Sept. 27, 2005] [hereinafter "Admin. R."].) Plaintiff has a high school education and has worked in the vocationally relevant past as a cabinet maker

and a deckhand. (*Id*. at 70.) Plaintiff alleges that he became unable to work beginning on July 15, 2001, due to symptoms associated with a thyroid condition and a goiter. (*Id*. at 50, 53.) Specifically, Plaintiff asserts that his medical conditions caused him to feel tired, disrupted his sleeping and breathing, and prevented him from turning his neck fully. (*Id.* at 53.)

The medical evidence in this case is scant. Plaintiff's earliest medical records date from December 7, 2002, when Plaintiff underwent a thyroid imaging process that confirmed the "marked enlargement" of Plaintiff's thyroid was "most consistent with a multinodular goiter." (*Id.* at 80.)

On February 11, 2003, Plaintiff presented to the University of Colorado Hospital. (*Id.* at 93.) Plaintiff reported a significant increase in the size of the goiter and complained of fatigue, odynophagia, exertional dyspnea, and weight loss of thirty-five pounds.[1] (*Id.* at 94, 119.) Notes from Plaintiff's examination reflect that on February 11, 2003, Plaintiff, who stands six feet tall, weighed one hundred thirty-five pounds.[2] (*Id.* at 94, 120.) Michael T. McDermott, M.D. and Janice A. Kerr, M.D. diagnosed Plaintiff with a massive goiter, adjusted Plaintiff's medication, and referred Plaintiff for further testing. (*Id.* at 121.)

---

[1] Odynophagia is painful swallowing. 4–O Attorneys' Dictionary of Medicine 638 (Matthew Bender 2005). Exertional dyspnea is shortness of breath brought on by physical exertion. 2–E Attorneys' Dictionary of Medicine 4977 (Matthew Bender 2005).

[2] The record of Plaintiff's February 11, 2003 medical visit reflects Plaintiff's height as six feet and six inches. (Admin. R. at 94, 120.) Plaintiff reported in his disability report and testified that his is six feet tall, and other medical records list his height to be six feet and zero inches. (*Id.* at 52, 89, 104, 179.)

In March 2003, Plaintiff underwent a fine-needle aspiration and an open thyroid biopsy, the results of which revealed Plaintiff had Hashimoto's thyroiditis.[3] (*Id.* at 83–92, 96–97, 106–10.) On March 24, 2003, physical examination revealed that Plaintiff weighed one hundred forty-six pounds. (*Id.* at 89.)

On May 1, 2003, Dr. Kerr wrote a letter "in support of [Plaintiff's] application" for social security benefits. (*Id.* at 82.) Dr. Kerr's letter essentially amounts to a description of Plaintiff's medical history. (*Id.*) In her letter, Dr. Kerr did not delineate any limitations on Plaintiff's physical activity. (*Id.*)

On May 13, 2003, Plaintiff presented to Dr. Kerr for a follow-up appointment. (*Id.* at 104–05.) Dr. Kerr's notes indicate that Plaintiff's goiter had decreased in size and Plaintiff weighed one hundred fifty-three pounds. (*Id.* at 104.) Dr. Kerr increased Plaintiff's thyroid medication dosage. (*Id.* at 105.) On May 24, 2003, Plaintiff presented to Dr. Kerr for another follow-up appointment. (*Id.* at 102–03.) Dr. Kerr's notes reflect that Plaintiff weighed one hundred forty-six pounds and had experienced "an interval improvement in the goiter size[] and obstructive symptomatology" since initiating a thyroid medication regimen. (*Id.* at 103.) Dr. Kerr noted that Plaintiff would likely need a thyroidectomy sometime in the future. (*Id.*)

On May 20, 2003, Karl T. Chambers, M.D. reviewed the medical evidence and recommended denial of Plaintiff's application for disability benefits. (*Id.* at 98.)

---

[3] Hashimoto's thyroiditis is an autoimmune disease of the thyroid gland, marked by an infiltration of the gland with white blood cells and the presence of antithyroid antibodies. 3–H Attorneys' Dictionary of Medicine 596 (Matthew Bender 2005).

In June 2003 and July 2003, Plaintiff underwent an appendectomy and operations to repair an obstructed bowel. (*Id.* at 99.) On August 13, 2003, Plaintiff presented to Dr. Kerr for a follow-up visit. (*Id.* at 100–01.) Plaintiff reported to Dr. Kerr "significant improvement" in the size of his goiter. (*Id.* at 101.) Plaintiff also reported significant improvement in the obstructive symptomatology. (*Id.* at 100.) "Specifically, [Plaintiff] no longer ha[d] to lean forward to eat . . . [and] also denie[d] any choking or supine dyspnea." (*Id.*) Plaintiff expressed a wish to undergo a thyroidectomy for cosmetic reasons. (*Id.* at 101.) Dr. Kerr noted that Plaintiff could address the issue in "approximately six to twelve months," after regaining the strength and weight Plaintiff lost in connection with his operations in June 2003 and July 2003. (*Id.*)

On August 25, 2003, Trent Hovenga, M.D. wrote a "letter of support" regarding Plaintiff's application for disability benefits. (*Id.* at 99.) Dr. Hovenga emphasized that since his operations in June 2003 and July 2003, Plaintiff: (1) had experienced slow normalization of his digestive system, (2) had lost ten pounds, (3) had a poor energy level, and (4) was receiving treatment for an open wound. (*Id.*) Dr. Hovenga did not state Plaintiff was subject to any particular limitations regarding physical activity, but opined that the duration of Plaintiff's problems was "not foreseeable." (*Id.*)

On March 28, 2004, Patty Beecroft, M.D. wrote a letter to the Social Security division of disability determination stating her opinion that Plaintiff was "unable to maintain gainful employment for a minimum of [six] months." (*Id.* at 116.) Dr. Beecroft noted that in 2003 Plaintiff had undergone multiple operations, from which he was still recovering. (*Id.*) Dr. Beecroft stated further that Plaintiff would require two additional operations for his enlarged

-4-

goiter. (*Id.*) Dr. Beecroft did not state that Plaintiff was subject to any particular limitations regarding physical exertion. (*Id.*) On March 29, 2004, Dr. Kerr increased Plaintiff's dosage of thyroid medication. (*Id.* at 117.)

## 2. *Procedural History*

On January 29, 2003, Plaintiff filed an application for disability insurance benefits and supplemental security income benefits. (*Id.* at 49–51.) On May 27, 2003, the social security administration denied Plaintiff's application. (*Id.* at 39.) On June 23, 2003, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 38.) On April 14, 2004, the ALJ held a hearing, at which Plaintiff appeared *pro se*. (*Id.* at 177.) Plaintiff and a vocational expert ("VE") testified at the hearing. (*Id.* at 175–87.)

Plaintiff testified that he was divorced and lived with his parents. (*Id.* at 179.) Plaintiff stated that he was six feet tall and he weighed one hundred and thirty-eight pounds. (*Id.*) Plaintiff testified that he had undergone numerous operations to remove his appendix, open his bowels, and repair a hernia. (*Id.* at 184–85.) Plaintiff explained that he had weighed between one hundred sixty-three and one hundred sixty-eight pounds for most of his adult life, but after the operations, his weight dropped drastically. (*Id.* at 179.)

Plaintiff testified that he did not have a driver's license, and his father drove him around. (*Id.* at 180.) Plaintiff stated he was able to take care of his personal needs and helped his mother with household chores, including cooking and taking out the trash. (*Id.*) Plaintiff stated that he left his last full-time job due to his fatigue, and tried to work part-time thereafter to no avail. (*Id.* at 181.)

Plaintiff testified that in 2002, his goiter was so large that he had to lean forward to eat or drink. (*Id.*) Plaintiff testified further that his goiter caused fatigue and he: (1) needed ten to twelve hours of sleep per night; (2) could work and perform chores for about two hours at a time before needing to rest for a half hour to an hour; and (3) felt he could perform a total three or four hours of work. (*Id.* at 182–84.)

The VE testified at the hearing regarding her review of the vocational exhibits in Plaintiff's file. (*Id.* at 185–86.) The VE testified that Plaintiff's past work as: (1) a cabinet builder was a skill-level three position requiring a medium exertional level; and (2) a deckhand was a skill-level four position requiring a heavy exertional level. (*Id.* at 186.)

On August 13, 2004, the ALJ issued his decision in which he determined that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 11–20.) The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of light work and noted that such work "exist[s] in significant numbers in the national economy." (*Id.* at 17, 19.)

In reaching his conclusion, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 15, 2001. (*Id.* at 15.) The ALJ determined that Plaintiff's impairments arising out of his recovery from hernia and appendectomy operations were not severe, because the recovery time from the operations was expected to be less than twelve months. (*Id.* at 16.) The ALJ found that Plaintiff had medically determinable, severe impairments in the form of thyroid problems and a goiter. (*Id.*) Despite their severity, the ALJ determined that the impairments were "not severe enough to meet or medically equal one of the impairments listed in Appendix 1,

Subpart P, Regulations No. 4." (*Id*.) The ALJ determined further that Plaintiff was not fully credible "in light of [Plaintiff's] own description of his activities and life style, [sic] discrepancies between [Plaintiff's] assertions and information contained in documentary reports, and findings made on examination." (*Id.* at 17.)

Based on the evidence presented, the ALJ concluded that Plaintiff had the RFC to perform light work, consisting of "lifting and carrying no more than [twenty] pounds occasionally and [ten] pounds frequently and standing and/or walking [six] hours in an [eight] hour day." (*Id.*) In accord with this RFC, the ALJ determined that Plaintiff could not perform his past relevant work. (*Id.* at 17–18.)

The ALJ underscored that Plaintiff maintained the RFC to perform substantially all of the strength demands required of light work and was not subject to nonexertional limitations. (*Id.* at 18.) The ALJ noted that due to Plaintiff's RFC, "the existence of occupations in the national economy is met by judicial notice," pursuant to the Medical-Vocational Guidelines (the "Grids"). (*Id.*) The ALJ thus determined that Plaintiff could perform a significant number of jobs in the local and national economy. (*Id.* at 19.) Consequently, the ALJ determined that Plaintiff was not disabled. (*Id.*)

On October 6, 2004, Plaintiff requested a review of the ALJ's decision. (*Id.* at 10A.) On May 20, 2005, the Appeals Council affirmed the ALJ's decision, making it the final administrative decision for the purposes of judicial review. (*Id.* at 5.) On July 20, 2005, Plaintiff filed a complaint in this court challenging the Commissioner's denial of disability and supplemental social

security income benefits. (Compl. [filed July 20, 2005].) On December 29, 2005, Plaintiff filed his opening brief. (Pl.'s Opening Br. [filed Dec. 29, 2005] [hereinafter "Pl.'s Br."].)

**ANALYSIS**

*1. Standard of Review*

Section 405(g) of the Social Security Act establishes the scope of this court's review of the Commissioner's denial of disability insurance benefits. *See* 42 U.S.C. § 1383(c)(3) (2006) (incorporating review provisions of 42 U.S.C. § 405[g]). Section 405(g) provides, in relevant part, that:

> [t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C. § 405(g) (2006). Thus, this court's review is limited to determining whether the record as a whole contains substantial evidence supporting the Commissioner's decision. *See id.*; *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992). The court must uphold the Commissioner's decision if it is supported by substantial evidence. *See Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir. 1987). This court cannot reweigh the evidence nor substitute its judgment for that of the ALJ. *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987). That does not mean, however, that my review is merely cursory. To find that

the ALJ's decision is supported by substantial evidence, the record must include sufficient relevant evidence that a reasonable person might deem adequate to support the ultimate conclusion. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). The ALJ's decision is also subject to reversal for application of the wrong legal standard. *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Frey,* 816 F.2d at 512.

## 2. *Evaluation of Disability*

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than sixty-five years of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The Social Security Act defines a disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In proving his disability, a claimant must make a *prima facie* showing that he is unable to return to the prior work he has performed. *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988). Once the claimant meets that burden, the Commissioner must show that the claimant can do other work activities and that the national economy provides a significant number of jobs which the claimant could perform. *Frey*, 816 F.2d at 512.

The Commissioner has established a five-step process to determine whether a claimant qualifies for disability-insurance benefits. *See* 20 C.F.R. § 404.1520 (2006); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987) (describing five-step analysis). A claimant may be declared disabled or not disabled at any step; and, upon such a determination, the subsequent steps may be disregarded. *See* 20 C.F.R. § 404.1520(a) (2006); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). First, the claimant must demonstrate that he is not currently involved in any substantial gainful activity. 20 C.F.R. § 404.1520(b) (2006). Second, the claimant must show a medically severe impairment (or combination of impairments) which limits his physical or mental ability to do basic work activities. *Id.* § 404.1520(c). At the third step, if the impairment matches or is equivalent to established listings, then the claimant is judged conclusively disabled. 20 C.F.R. § 404.1520(d) (2006). If the claimant's impairments are not equivalent to the listings, the analysis proceeds to the fourth step. At this stage, the claimant must show that the impairment prevents him from performing work he has performed in the past. *See Williams*, 844 F.2d at 751 (citations omitted). If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e) (2006); *Williams*, 844 F.2d at 751. The fifth step requires the Commissioner to demonstrate that (1) the claimant has the RFC to perform other work based on the claimant's age, education, past work experience, and (2) there is availability of that type of work in the national economy. *See* 20 C.F.R. § 404.1520(f) (2006); *Williams*, 844 F.2d at 751.

### 3.     *Disability Determination*

Plaintiff sets forth three arguments in support of his contention that the ALJ's decision is erroneous. Plaintiff argues that the ALJ erred by: (1) failing to consider Plaintiff's weight in

considering the severity of Plaintiff's impairments at step three; (2) failing to develop the record; and (3) using the medical-vocational guidelines to determine Plaintiff's disability at step five.[4] (Pl.'s Br. at 4–7.) I need only address the first two arguments.

### *a.   ALJ's Determination at Step Three*

Plaintiff argues that the ALJ erred at step three by failing: (1) to find Plaintiff's impairments during his recovery from operations severe; and (2) to consider Plaintiff's weight and Listing 5.08 in assessing the severity of his impairments. (Pl.'s Br. at 5–6.) First, Plaintiff argues that the ALJ wrongly found Plaintiff's impairments in recovering from appendectomy and hernia operations not to be severe because his recovery was expected to last less than twelve months. (*Id*. at 5.) Plaintiff argues that the ALJ made this determination in error because Plaintiff's operations "went from June 2000 through December 2004." (*Id.*) Plaintiff does not suggest which listing his impairment might meet and points to no evidence to refute the ALJ's findings regarding the expected length of Plaintiff's recovery. (*Id*.)

By statute, Plaintiff may be deemed to be under a disability if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical . . . impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). The record reflects that Dr. Kerr stated Plaintiff could consider cosmetic surgery for his goiter after regaining the strength and weight Plaintiff lost in connection with his appendectomy and bowel operations in June 2003 and July 2003. (Admin.

---

[4]In the interest of clarity, I have reordered Plaintiff's substantive arguments.

R. at 101.) Dr. Kerr expected Plaintiff's recovery period to last "approximately six to twelve months." (*Id.*) There is no evidence on the record relating to Plaintiff's June 2000 operation or his expected recovery time in connection therewith. (*Id.*, *passim*.) Plaintiff's December 2004 operation is not part of the record in this case, because it took place after the ALJ's August 2004 decision. *See* 20 C.F.R. 404.970(b); *Banning v. Barnhart*, 35 Fed. Appx. 785, 786 (10th Cir. 2002) (medical evidence not presented to the ALJ is only relevant where it relates to the period on or before the date of the administrative law judge hearing decision). Accordingly, substantial evidence supports the ALJ's determination that Plaintiff's impairments from surgery recovery were not severe due to their expected duration.

Plaintiff also argues that the ALJ should have considered Listing 5.08 and Plaintiff's weight in assessing his impairments.[5] (Pl.'s Br. at 5.) Listing 5.08 relates "[w]eight loss due to any persisting gastrointestinal disorder" and contemplates a situation in which a six-foot tall man: (1) maintains, for at least three months despite prescribed therapy, and is expected to maintain for at least twelve months, a weight of one hundred twenty-nine pounds or less; and (2) experiences one of the following conditions:

    1. Serum albumin of [three grams] per deciliter [] or less; or
    2. Hematocrit of [thirty] percent or less; or
    3. Serum calcium of [eight miligrams] per deciliter[] [] or less; or
    4. Uncontrolled diabetes mellitus due to pancreatic dysfunction with repeated hyperglycemia, hypoglycemia, or ketosis; or
    5. Fat in stool of [seven grams] or greater per [twenty-four]-hour stool specimen; or

---

[5]Notably, Plaintiff did not report that his weight limited his ability to work in his application for social security benefits. (Admin. R. at 53.)

> 6. Nitrogen in stool of [three grams], or greater per [twenty-four]-hour specimen; or
> 7. Persistent or recurrent ascites or edema not attributable to other causes.

20 C.F.R. Part 220 App. 1 (2006). Here, Plaintiff underscores that he weighed one hundred thirty-five pounds in January 2003, one hundred twenty-nine pounds on July 25, 2003, and one hundred thirty-eight pounds on December 10, 2003 and argues his weight meets or equals the requirements of Listing 5.08.[6] (Pl.'s Br. at 5.) I disagree.

First, for Plaintiff "to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Plaintiff's impairment cannot equal Listing 5.08 because no evidence of record suggests that any treating source diagnosed Plaintiff with a disorder of the digestive system presumed to last for twelve months, as required. Listing 5.08 expressly contemplates weight loss due to:

> [d]isorders of the digestive system which result in a marked impairment usually do so because of interference with nutrition, multiple recurrent inflammatory lesions, or complications of disease, such as fistulae, abscesses, or recurrent obstruction. . . . These complications must be shown to persist on repeated examinations despite therapy for a reasonable presumption to be made that a marked impairment will last for a continuous period of at least [twelve] months.

20 C.F.R. Part 220 App. 1 (2006).

---

[6]Plaintiff could also satisfy Listing 5.08 by weighing one hundred twenty-two pounds or less. 20 C.F.R. Part 220 App. 1 (2006). Plaintiff plainly does not allege — and the record does not suggest — that he measured such a weight at any time. Accordingly, I discuss only the requirement under Listing 5.08 that contemplates a six-foot-tall man weighing one hundred twenty-nine pounds. (Admin. R. at 144.)

-13-

Further, the evidence does not suggest that Plaintiff's weight remained at one hundred twenty-nine pounds for three months, as required. *Id.* The record shows that Plaintiff weighed one hundred twenty-nine pounds on July 25, 2003, one hundred forty-six pounds on May 24, 2003, and one hundred thirty pounds on August 2, 2003. (Admin. R. at 102, 142, 144.) Accordingly, Plaintiff cannot establish that he maintained the required weight for the required period of time under Listing 5.08. Finally, Plaintiff's impairment cannot meet Listing 5.08 because no evidence of record supports that any treating source diagnosed Plaintiff with any of the seven above-outlined conditions required in addition to the weight requirement. Indeed, Plaintiff does not even reference the additional requirement in his argument. (Pl.'s Br., *passim*.) The record does not reflect that: (1) Plaintiff maintained the requisite weight for three months or was expected to maintain the weight for twelve months; or (2) a treating source diagnosed Plaintiff with either a digestive disorder or any of the seven conditions to satisfy the listings. Accordingly, Plaintiff's impairment does not match Listing 5.08.

For similar reasons, Plaintiff's impairment does not meet Listing 5.08. Plaintiff does not suggest what findings are equal in severity and duration to those required by the listing. To establish his impairment is "equivalent to a listed impairment, [Plaintiff] must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531 (citation and internal quotation marks omitted); *see Puckett v. Chater*, 100 F.3d 730, 733 (10th Cir. 1996) (holding that an impairment will be deemed medically equivalent to a listing if the medical findings are at least equal in severity and duration to the listed findings).

Plaintiff does not meet or match the requirements of Listing 5.08. Accordingly, the ALJ was supported by substantial evidence and did not err in his determination at step three.

### b.     *The ALJ's Development of the Record*

Plaintiff argues that the ALJ erred by failing to develop the record in this case. (Pl.'s Br. at 6–7.) Somewhat cryptically, Plaintiff asserts that the ALJ relied on "no medical evidence" to "overrule the treating physicians," and the "absence of evidence utilized buttressing the ALJ's RFC determination is not supported by substantial evidence." (*Id.* at 6.) Plaintiff appears to argue that the ALJ erred at step four in determining Plaintiff's RFC due to his failure to develop the record.

"In determining a claimant's physical abilities, the ALJ should 'first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis.'" *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citing 20 C.F.R. § 404.1545[b]). Moreover, "[i]t is axiomatic that all of the ALJ's required findings must be supported by substantial evidence." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999); *see also* Soc. Sec. Ruling 96–8P, 1996 WL 374184 at *7 (July 2, 1996) ("In assessing RFC, the [ALJ] must discuss the individual's ability to perform sustained work activities . . . based on the evidence available in the case record.") In the instant case, the record reflects that none of Plaintiff's treating physicians imposed limitations on Plaintiff's performance of work-related activities.[7] Notably, the record also reflects that none of

---

[7]Indeed, among all of the physicians' notes and opinions, only Dr. Beecroft refers to Plaintiff's ability to work, stating baldly that Plaintiff could not maintain gainful employment for a

Plaintiff's physicians opines at all on Plaintiff's ability or inability to perform work-related activities. As such, the ALJ's RFC determination was not supported by substantial evidence.

ALJs are obligated to "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." Soc. Sec. Ruling 96–8p, 1996 WL 374184 at *5. When an ALJ finds no substantial evidence upon which to base an RFC finding, the ALJ should re-contact the claimant's physicians. 20 C.F.R. §§ 416.912(e), 404.1512(f), 404.1519a(a)(1) (2006); 42 U.S.C. § 423(d)(5)(B) (2006); *see Adkins v. Barnhart*, 80 Fed. Appx. 44, 48 (10th Cir. 2003). If a claimant's physicians have additional records that were not provided, the ALJ has the power to subpoena them, if necessary. 20 C.F.R. §§ 404.950(d)(1), 416.1450(d)(1); *Adkins*, 80 Fed. Appx. at 48. If additional records either do not exist or are insufficient to clarify the inconclusive evidence in the record, then the ALJ should order a consultative examination. 42 U.S.C. § 423(d)(5)(B) (2006); 20 C.F.R. §§ 1512(f), 1519a(a)(1) (2006); *Adkins*, 80 Fed. Appx. at 48. In the instant case, when faced with the lack of medical evidence upon which to base his RFC assessment, the ALJ should have recontacted Plaintiff's physicians. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002) (noting ALJ must recontact a treating physician when the information the physician provides is inadequate to determine whether the claimant is disabled). The ALJ thus erred by failing to develop the record in assessing Plaintiff's RFC. I need not address Plaintiff's arguments regarding the ALJ's errors at step five. Plaintiff's RFC necessarily

---

period of at least six months. (Admin. R. at 116.) Dr. Kerr's letter merely reiterates Plaintiff's treatment history and Dr. Hovenga's letter states only that the duration of Plaintiff's problems is "unforeseeable," without referring to any functional limitations those problems might impose. (*Id*. at 82, 99.)

drives the ALJ's assessment of the type of work Plaintiff may perform. Since the step four RFC determination is problematic, it follows that the step five determination is also problematic.

*4.    Conclusion*

Based on the foregoing, it is therefore ORDERED that the Commissioner's decision is AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.

The hearing scheduled for April 27, 2006, is VACATED.

Dated this 24th day of April, 2006.

                                      BY THE COURT:

                                      s/ Edward W. Nottingham
                                      EDWARD W. NOTTINGHAM
                                      United States District Judge